```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                               :    Chapter 7
In re:                                                         :
                                                               :    Case No. 07-35608 (cgm)
        CHRISTOPHER W. SCHUESSLER and                          :
        BOBBI ANN SCHUESSLER,                                  :
                                                               :
                                Debtors.                       :
                                                               :
---------------------------------------------------------------X
```

**ORDER DIRECTING CHASE HOME FINANCE, LLC TO APPEAR AND SHOW
CAUSE WHY IT SHOULD NOT BE SANCTIONED PURSUANT TO RULE 9011 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND 11 U.S.C. § 105(a)**

      Debtors filed this joint chapter 7 petition on April 30, 2007. In Schedule A to the bankruptcy petition, the Debtors indicate that they own residential real property located in Mamakating, New York (the "Residence"). Schedule A also indicates that the Residence has a value of $299,900, encumbered by liens totaling $178,937.09: of this total amount, $164,058.33 was owed to "Chase" on account of a first mortgage on the Residence. The Debtors' petition and Statement of Financial Affairs do not indicate that the Debtors were in arrears on either the first or second mortgage prior to filing their bankruptcy petition. The Debtors received a Chapter 7 discharge by order dated August 8, 2007.

      On July 6, 2007, Chase Home Finance, LLC ("Chase") filed a motion in this Court "for an Order pursuant to 11 U.S.C. §362(d)(1) terminating the automatic stay as to movant's interest in real property" (the "Motion"). The Motion was accompanied by an affidavit, sworn in Columbus, Ohio, from Sophia Salinas, identified as a "Bankruptcy Representative of CITIBANK, N.A. AS TRUSTEE C/O CHASE HOME FINANCE, LLC" (the "Affidavit"). Chase alleged in both the Motion and Affidavit that:

> The Note and Mortgage provide that the Debtors will be in default if they do not make full monthly payments on each due date. As of the 29th day of June, 2007, the Debtors have failed to make 2 payments in the amount of $2,079.12 which represents the payments due the 20th day of May, 2007 through June, 2007 and have not cured said default.

      In the Motion, Chase did not allege that the Debtors had failed to make mortgage payments prior to the bankruptcy filing. Chase also did not dispute the statement in the Debtors' petition that the Residence had equity in excess of $120,000. Notwithstanding, Chase argued that it:

> is suffering immediate and irreparable injury and loss in that insufficient income is being received by it on the Note secured by the Mortgage to pay real estate taxes and hazard insurance and as each installment period passes and as advances are made, Secured Creditor is further exposed and the equity securing its interest

in the Mortgaged Premises is further diminished to the point where it does not now nor will it have adequate protection for that security interest.

In the Memorandum of Law accompanying the Motion, Chase made the following, obviously erroneous statement: "As aforementioned, the value of the mortgaged premises is $299,900.00 and as such, no equity exists. Therefore, the stay must be lifted pursuant to §362(d)(1) and (2)."

The Debtors opposed the Motion on July 12, 2007. Debtor Christopher Schuessler submitted an affidavit, sworn to on July 11, 2007 and attaching a Chase receipt dated May 25, 2007. Mr. Schuessler states that the receipt represents the May 2007 payment, which was made at a Chase bank branch. As for the other payment that Chase alleged had not been paid, Mr. Schuessler stated:

> I tried to pay June's mortgage payment at the branch again, but the payment would not go through.
>
> Mr. Doyle at the branch could not find the reason, so I called and spoke with Jennifer at the Bankruptcy Department who advised me that I am not allowed to pay by phone or at the branch, that I must mail payments to them.
>
> On June 29, 2007 I mailed a check in the sum of $2,100.00 Check #124 which check has not cleared the bank as of today.

A hearing on the Motion was held August 14, 2007. Chase appeared by local counsel, who stated her understanding that the Debtors were "only behind one month" and that was prior to the bankruptcy filing. The Court almost immediately expressed concern about the allegations in the Debtors' opposition and stated, "If that's the case, I want a hearing on this." The Court further stated: "I want Chase in here," and instructed Chase's local counsel to "get me somebody at Chase that is a bankruptcy executive" because "if Chase has messed [the Debtors] up since they filed, they've got to be in this court room." The Court advised the parties of the recent ruling by Judge Joel B. Rosenthal in *In re Nosek*, 363 B.R. 643 (Bankr. D. Mass. 2007) and directed Chase to submit an affidavit, within ten days, from "a high-ranking officer" at Chase to address whether Chase has a policy of refusing debtors' payments when made by telephone or at a local banking branch (the "Policy Affidavit").

The Court adjourned the Motion and scheduled an evidentiary hearing for October 4, 2007. Chase later requested, and was granted, an adjournment of the evidentiary hearing to November 1, 2007 and thereafter to December 7, 2007. On November 28, 2007, a letter was filed on the Court docket in this case addressed to the Clerk of the Court from a legal assistant acting on behalf of "Pillar Processing, LLC," an entity which, on its face, was unknown to the Court and appeared to have no connection with this case or these Debtors. The letter stated:

> Respecting captioned bankruptcy matter, please be advised that the 362 motion scheduled for December 7, 2007, at 10:30am [sic] has been withdrawn.

By the November 28, 2007 letter that purported to withdraw the Motion, Chase and its Counsel apparently considered all of the matters resolved. Chase did not contact the Court with regard to the evidentiary hearing that had been scheduled by the Court and did not submit the Policy Affidavit that the Court directed Chase to file within ten days of the August 14, 2007 hearing. The Court directed Chase to appear at the evidentiary hearing on December 7, 2007 with a bank officer, notwithstanding the fact that Chase had attempted to withdraw the Motion

- 2 -

through Pillar Processing.  After multiple requests to withdraw the motion or adjourn the evidentiary hearing were denied, the Court instructed Chase to file the Policy Affidavit by not later than 2 p.m. on December 6, 2007, after which time Chase would be permitted to renew its request to either withdraw the Motion or adjourn the evidentiary hearing.  Chase filed the Policy Affidavit and an attorney affirmation on December 6, 2007.  Upon review of those documents, which are discussed below, the Court adjourned the December 7, 2007 evidentiary hearing and issued this Order to Show Cause.

The Policy Affidavit was executed by Deborah K. Baker, an Assistant Vice President at Chase, with a business address in Columbus, Ohio.  Ms. Baker explains that Chase "is acting as a servicer to Citibank, N.A. as Trustee, and "acting in its capacity as servicer of the Loan has internal procedures in place regarding the application of payments received from mortgagors under the protection of Chapter 7 of the Bankruptcy Code."  Ms. Baker then set forth "an explanation of Chase's procedures as they relate to payment receipts from mortgagors under Chapter 7 of the Bankruptcy Code." Ms. Baker stated: "It is Chase's policy to extend the courtesy to mortgagors who are current with their mortgage obligations to make payments at the local banking branches of Chase and by telephone." (emphasis added).  Ms. Baker annexed as Exhibit B to the Policy Affidavit, a letter "setting forth the policies in place regarding" the mortgage payments of mortgagors who file Chapter 7 bankruptcies.  Exhibit B to the Policy Affidavit is a letter addressed to the Debtors, which states: "Chase's policy is to monitor your loan in our Bankruptcy Department, even if your loan is current.  We will monitor your loan in this department to protect you from improper contacts." (emphasis added).  The letter required payments to be made to Chase at a post office box in Phoenix, Arizona and also noted: "We do accept payments by phone using your checking account ($20.00 processing fee), and Western Union (code city address is Rancho, CA)."  The letter does not specifically state that the Debtors would not be permitted to make their mortgage payments at a Chase banking branch.

> Ms. Baker also stated in the Policy Affidavit:
>
> It is Chase's policy not to accept payments on loans under Chapter 7 Bankruptcy Protection ("Protected Loans") at local banking branches.  Said policy of not accepting payments on Protected Loans at the local banking branches is to ensure that payments received on Protected Loans are processed accurately within the context of the requirements of the Bankruptcy Code, established procedures, and well within the infrastructure for processing such payments.
>
> As set forth in Exhibit B, Chase will accept payments from a mortgagor on a Protected Loan by telephone.  As per Chase's records, there is no indication that the Debtors were advised by Chase that they could not make a payment on their Mortgage by phone.

The attorney affirmation from Chase's counsel explains the circumstances that lead to the attempt to withdraw the Motion:

> As settlement negotiations continued, on consent of the parties, counsel to the Secured Creditor approached the Court and sought adjournments of the Evidentiary Hearing.  The Court was kind, and provided said requested adjournments….

- 3 -

> In the intervening time period, the litigants continued with their settlement negotiations. As part of said negotiations, the fact that the Debtors have secured a Chapter 7 discharge was taken into account. In spite of the best efforts by counsel, agreement could not be reached as to the dues owed by the Debtors on account of their mortgage.
>
> In the above context, Debtors' counsel suggested that the Secured Creditor withdraw its Motion for Relief from stay and all parties maintain their respective rights. Counsel to the Secured Creditor advised the Secured Creditor of its options in the context of the settlement negotiations. The Secured Creditor made the decision that, in its business judgment, the cost of litigation outweighs a potential favorable result and choose [sic] to withdraw the motion despite the fact that the Secured Creditor's records still indicated that the Debtors were delinquent in their mortgage obligations.

(emphasis in original).

The submissions from Chase indicate that mortgagors are granted "the courtesy" to make payments at Chase's local banking branches so long as they are current with their mortgage obligations. Chase has never alleged in a written submission that the Debtors were delinquent in their mortgage payments prior to the bankruptcy filing. The submissions from Chase also indicate that all mortgagors in bankruptcy are barred from making payments at banking branches, regardless of whether or not they are current in their loan payments.

The loans of bankruptcy debtors are described by Chase in the Policy Affidavit as "Protected Loans" because Chase is required to ensure that bankruptcy debtors are "protected from improper contacts" and that the loans are processed correctly. However, the debtors' loans are "protected" in this case by denying to debtors the same payment options available to other customers who are current on their loans. Chase – which functions in this case as a mortgage servicer – draws no distinction between the separate acts of (1) accepting payments from debtors and (2) proper processing thereafter by Chase. Chase has offered no explanation as to why its branch could not have accepted the payment from the Debtors and forward the payment to its P.O. Box or the appropriate department for processing. Thus, it appears that the party "protected" by Chase's policies is Chase, at the expense of bankruptcy debtors.

The potential prejudice to debtors from this scheme is well illustrated in this case, where the Debtors appear to have been current with their mortgage payments until Chase refused to accept their mortgage payments at a local branch; Chase then moved in this Court for relief from stay based upon the failure to make the payment. The Debtors now risk loss not only of their home but home equity in excess of $100,000. In the Policy Affidavit and the attorney affirmation submitted by Chase's counsel, Chase continues to maintain that the Debtors failed to make the May 2007 and June 2007 payment, notwithstanding the fact that the Debtors had previously submitted a receipt from Chase proving that the May 2007 payment was made. It is clear from the affirmation of Chase's bankruptcy counsel that Chase will continue to assert that the Debtors are in arrears after this bankruptcy case has closed. Thus, when the bankruptcy case is closed, Chase could commence an unwarranted foreclosure action.

**Fed. Rule Bankr. P. 9011**

Rule 9011(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances –
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> >
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Where a pleading or submission from a party violates one or more of the provisions of Bankruptcy Rule 9011(b), Bankruptcy Rule 9011(c) permits the Court, "after notice and a reasonable opportunity to respond," to "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated [Bankruptcy Rule 9011(b)] or are responsible for the violation." Such sanction "may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Bankruptcy Rule 9011(c)(2).

Here, Chase alleged in its Motion that the Debtors had failed to make two post-petition mortgage payments. The Debtors have provided documentation suggesting the allegations have no evidentiary support, which would be a violation of Bankruptcy Rule 9011(b)(3). The Debtors produced a receipt from Chase as evidence that the May 2007 payment had, in fact, been made. As for the second payment, the Debtors alleged that they tendered the payment to a Chase banking branch, and the payment was refused. Chase has confirmed that this is its policy. As the allegations made by Chase were contained in sworn affidavits, they may constitute false oaths, a criminal violation subject to a fine and/or imprisonment. *See* 18 U.S.C. § 152(3); 18 U.S.C. § 1623(a); *see also In re Fagan*, 376 B.R. 81, 82 (Bankr. S.D.N.Y. 2007) (assessing attorneys' fees and $10,000 sanction against mortgage servicer and its law firm for submitting a "false certification," observing that "debtors must not be subjected to the risk of foreclosure and loss of their homes on the basis of false certifications of post-petition defaults").

Where, as here, a debtor has tendered mortgage payments that were refused by the creditor, and the creditor thereafter moves for relief from stay on the grounds that those payments were not made, sanctions would appear to be in order. "Even the least sensitive notion of good faith dealings would condemn an effort of a creditor to put a debtor in default on a debt by refusing the debtor's payment…." *In re Guinn*, 102 B.R. 838, 843 (Bankr. N.D. Ala. 1989). The court that decided *Guinn* did not believe it was required, under the circumstances in that case, to consider whether "the filing of the creditor's motion for relief from the stay is, of itself, harassive and, therefore, coercive and, thus, a violation of that stay." *Id.* The circumstances in this case do warrant the consideration of sanctions. The totality of the circumstances in this case suggest that Chase may have submitted the Motion for an improper purpose, which would be a violation of Bankruptcy Rule 9011(b)(1). In particular, the Court notes that the Debtors have substantial equity in their Residence.

### 11 U.S.C. § 105(a) and *In re Nosek*

The Court is troubled by Chase's policy of refusing to permit bankruptcy debtors to make mortgage payments at local bank branches. Recently, a Massachusetts bankruptcy court sanctioned a mortgage company, Ameriquest, for failure to adjust its accounting procedures "just because a debtor filed for bankruptcy." *In re Nosek*, 363 B.R. 643 (Bankr. D. Mass. 2007). In *Nosek*, Ameriquest argued that if it was required to apply payments in a manner different from the underlying contracts, it "would be forced to constantly monitor each debtor's bankruptcy case, readjust their accounting methodologies, and continually recalculate how payments should be applied." *Id*. at 649. The court responded:

> That is exactly the point; Ameriquest must adjust its accounting practices because of Nosek's bankruptcy. The Bankruptcy Code is not a cafeteria; lenders do not decide which of its provisions apply to them. Once a debtor files for Chapter 13, <u>the Bankruptcy Code, and only the Bankruptcy Code, dictates the protections</u> (such as the preemption of state law remedies) afforded to the lender <u>and the obligations</u> (such as the separate accounting for pre-and-post petition payments) <u>required of them</u>.

*Id*. at 649-650 (emphasis added). Ameriquest also argued that it could not use its computer system to track bankruptcy payments because no software existed to track such payments. The Judge in *Nosek* rejected this argument as "an apparent excuse as to why Nosek's payment history was inaccurate" and responded that Ameriquest "is not excused from doing it right, even if it is an administrative burden." *Id.* at 650. The *Nosek* court awarded punitive damages of $500,000 against Ameriquest pursuant to 11 U.S.C. § 105(a) because Ameriquest's accounting practices "are wholly unacceptable for a national mortgage lender." *Id.* at 649.

Chase's policies are designed to accurately process payments from mortgagors in bankruptcy, but the policy places the administrative burden on the debtors. The ability to make mortgage payments in person and receive an immediate record of payment is an important and fundamental right for bankruptcy debtors who have experienced "payment tracking" issues. Chase's policy of rejecting payments in person at a banking branch because Chase might otherwise make a processing mistake is unacceptable because it makes it harder for bankruptcy debtors to remain current on their mortgage payments and, as happened in this case, can be directly responsible for placing debtors into default (if only according to Chase's records).

- 6 -

> Title 11 U.S.C. § 105(a) permits a bankruptcy court to:
>
> issue any order, process, or judgment that is necessary or appropriate <u>to carry out the provisions of this title</u>. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or <u>to prevent an abuse of process</u>.

(emphasis added).  Whether deliberately or inadvertently, Chase's conduct in this case, and its policies regarding bankruptcy debtors, stand in the way of important rights afforded to debtors under the Bankruptcy Code, such as the right to the protection of the automatic stay pursuant to 11 U.S.C. § 362(a), and the essential concept of a "fresh start."  Chase's conduct and policies have the effect of creating an obstacle course for debtors who desire to make their contractual mortgage payments.  In this bankruptcy case, Chase's policy of rejecting payments created a default where none existed before.  Chase then acted upon the default it created, by filing a motion in this Court to terminate the automatic stay in the Debtors' case, alleging that it "is suffering immediate and irreparable injury and loss in that insufficient income is being received by it."

Upon the foregoing, it is hereby

**ORDERED,** that a hearing shall be held on January 14, 2008 at 10:30 a.m. before the Honorable Cecelia G. Morris, United States Bankruptcy Judge, at the United States Bankruptcy Court, 355 Main Street, Poughkeepsie, New York, 12601  (the "<u>Hearing</u>"); and it is further

**ORDERED,** that at the Hearing, Chase shall show cause why it should not be sanctioned, for the reasons set forth in this Order.  Sanctions may include the Debtors' costs and attorneys' fees, as well as punitive damages in an amount to be determined by the Court; and it is further

**ORDERED,** that Chase shall appear at the Hearing by Deborah K. Baker and Sophia Salinas; and it is further

**ORDERED**, that on or before 5:00 p.m. on December 10, 2007, the Clerk of the Court shall serve a copy of this order by first-class mail upon (i) Chase, to the attention of its President; (ii) Counsel for Chase, (iii) Deborah K. Baker, (iv) Sophia Salinas, (v) Counsel for the Debtors, and (vi) the United States Trustee.

Dated: Poughkeepsie, New York
      December 10, 2007

                                           /s/ Cecelia Morris
                                         CECELIA G. MORRIS
                                         UNITED STATES BANKRUPTCY JUDGE

- 8 -

To:    Chase Home Finance, LLC
Attn.: President
Chase Home Finance LLC
10790 Rancho Bernardo Road
San Diego, California  92127

Deborah K. Baker
Assistant Vice President
Chase Home Finance, LLC
3415 Vision Drive
Columbus, Ohio  43219

Sophia Salinas
Bankruptcy Representative
Chase Home Finance, LLC
3415 Vision Drive
Columbus, Ohio  43219

Sophia Salinas
Bankruptcy Representative
Chase Home Finance LLC
10790 Rancho Bernardo Road
San Diego, California  92127

Dennis Jose, Esq.
Steven J. Baum, P.C.
900 Merchant's Concourse
Suite 412
Westbury, New York  11590

John J. Fallon, Esq.
McAdam & Fallon, P.C.
90 Scofield Street
P.O. Box 500
Walden, New York 12586

Eric J. Small, Esq.
Office of the United States Trustee
74 Chapel Street
Albany, New York 12207